53 F.3d 341
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Ruben MANZANAREZ-MERCODA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Damian FRANCO-LOPEZ, Defendant-Appellant.
 Nos. 94-30027, 94-30028.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 13, 1995.
Decided May 1, 1995.
 
 1
 Before: PREGERSON and TROTT, Circuit Judges, and FITZGERALD,* Senior District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Ruben Manzanarez-Mercoda and Damien[1] Franco-Lopez appeal their jury convictions for possession of cocaine with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1). They claim that the district court erred in refusing to disclose or hold an in camera hearing on the identity of the confidential informant and that the search failed to comply with the "knock-and-announce" statute 18 U.S.C. Sec. 3109.
 
 I. FACTS AND PRIOR PROCEEDINGS
 
 4
 Within 48 hours before April 29, 1993, an officer from the Eugene, Oregon Interagency Narcotics Enforcement Team ("INET") received a call from a confidential informant ("CI") in which the CI stated that he had witnessed a person named Damien sell cocaine from an approximate two pound supply out of Room #4 in the Mitchell Motel in Springfield, Oregon. Using this information, the officer obtained a warrant from a state judge authorizing a search of the motel room.
 
 
 5
 Sometime after 8:22 p.m. on April 29, when the warrant was signed, members of INET approached the Mitchell Motel and positioned themselves at the front and back doors of Room #4. The officers knocked on the front door and announced that they were police with a search warrant. No response being heard, the door was forced open five to ten seconds after the knock.
 
 
 6
 Room #4 is approximately 300 to 500 square feet in area. The front door opens into a room with a bed, couch, television set, and coffee table. The room is small and without much foot space. It connects with an "incredibly small" kitchen and dining area. To the left of the dining area is an "incredibly small" bedroom which has a "small bathroom."
 
 
 7
 When the officers entered the room, Patricio Franco-Lopez, a co-defendant, was on the bed in the front room. Defendant Ruben Manzanarez-Mercoda was "running from the front door toward the kitchen-dining room area." Defendant Damien Franco-Lopez was not at the motel room at the time of police entry, but arrived by car about a half hour later. After being advised of their Miranda rights, defendants Damien Franco-Lopez and Ruben Manzanarez-Mercoda gave detailed statements to the officers.
 
 
 8
 On May 19, 1993, the defendants and two other individuals, were indicted for possession of cocaine with the intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2.
 
 
 9
 On June 11, 1993, Franco-Lopez filed a Motion to Suppress evidence alleging a possible violation of 18 U.S.C. Sec. 3109, the "knock and announce" statute. Also on June 11, 1993, Manzanarez-Mercoda filed a Motion to Compel Informant's Identity and Location or, in the alternative, for an In Camera Hearing. Each of the defendants filed a Motion to Join in the motions filed by other defendants.
 
 
 10
 On June 22, 1993, the magistrate judge denied the Motion to Compel Disclosure and declined to conduct an in camera hearing. These rulings were affirmed by the district court on June 23, 1993. Also on June 23, the court denied the Motion to Suppress finding that the officers had complied with the "knock and announce" statute, and that there were sufficient exigent circumstances to justify the officers' manner of entry.
 
 
 11
 A two-day jury trial was held August 9th and 10th, 1993. The defendants were found guilty as charged. On January 19, 1994, Manzanarez-Mercoda was sentenced to 78 months imprisonment and a three-year term of supervised release and Franco-Lopez was sentenced to 94 months imprisonment with a three-year term of supervised release.
 
 
 12
 The district court had jurisdiction under 18 U.S.C. Sec. 3231. We have jurisdiction under 28 U.S.C. Sec. 1291. Judgment was entered on January 20, 1994. Both defendants filed timely notice of appeal on January 21, 1994.
 
 II. DISCUSSION
 
 13
 A. Denial of Motion to Disclose CI or Hold an In Camera Hearing.
 
 Standard of Review
 
 14
 The decision whether to disclose the identification of a confidential informant is reviewed for an abuse of discretion. United States v. Sanchez, 908 F.2d 1443, 1451 (9th Cir. 1990). In reviewing the district court's decision, this court must balance the public interest in protecting the flow of information against the defendant's right to prepare a defense. Id. Nondisclosure is an abuse of discretion if disclosure is essential to a fair determination of the defendant's cause. See Roviaro v. United States, 353 U.S. 53, 62 (1957).
 
 
 15
 The trial court's decision whether to conduct an in camera proceeding is reviewed for an abuse of discretion. See United States v. Spires, 3 F.3d 1234, 1239 (9th Cir. 1993).
 
 1. Motion to Disclose CI
 
 16
 Appellants contend the district court abused its discretion in refusing to disclose the identity of a confidential informant. To succeed on this claim, appellants must demonstrate that disclosure would be "relevant and helpful to [their] defense," or "essential to a fair determination of [the] cause." Roviaro v. United States, 353 U.S. at 60-61. Here, as in United States v. Williams, 898 F.2d 1400 (9th Cir. 1990), the informant simply helped establish probable cause to search the motel room; the CI did not testify at trial. The defendants were convicted for reasons other than the observations or the testimony of the informant. See id. at 1402.
 
 2. Refusal to Hold In Camera Hearing
 
 17
 In United States v. Amador-Galvan, 9 F.3d 1414 (9th Cir. 1993), we found the trial court abused its discretion in failing to hold an in camera hearing to determine whether disclosure of the identities of four confidential informants would be relevant and helpful. In Amador-Galvan the prosecution's theory hinged on the assumption that Amador-Galvan was the driver of a car identified by a confidential informant. If any of the CIs were participant witnesses, they could provide eyewitness testimony that potentially could devastate the government's case. The court found that this "evidence would clearly be 'relevant and helpful' to preparing Amador-Galvan's defense." Id. at 1417. The court held that "[b]ecause Amador-Galvan and Molina have made a threshold showing of need, the district court should have granted an in camera hearing to determine whether in fact any of these informants would be helpful to the defendant, and to aid in its application of the Roviaro balancing test." Id.
 
 
 18
 We find Amador-Galvan distinguishable. These defendants were not charged with any acts to which the CI was a percipient witness and the CI gave no information relevant to the charged offenses. The CI simply enabled the government to pursue a warrant to search the motel room. Manzanarez-Mercoda and Franco-Lopez did not make a threshold showing of need sufficient to require the district court to hold an in camera hearing. Specifically, the magistrate found:
 
 
 19
 All right. Well, I disagree that the informant should be disclosed. The indictment charges that on a certain date the codefendants possessed cocaine with [intent] to distribute. The fact that the informant may have been at this location buying drugs on a previous date and that information led to the execution of the search warrant does not thereby render the informant disclosable or material for the defense.
 
 
 20
 It appears that this case will rise or fall on what the government is able to prove took place on April 29th and what degree of participation each of these defendants had on that date with the cocaine that was found. The fact that some informant on an earlier date didn't see some or all of the defendants at the residence when he bought cocaine, is not by virtue of that fact culpable. So I deny the motion to disclose the informant.
 
 
 21
 (R.T. 6/23/93: 16-17).
 
 
 22
 Because the CI could only testify to uncharged acts and those acts would not have been relevant or helpful to the defense, we do not find the district court abused its discretion in refusing to identify the confidential informant or hold an in camera hearing.
 
 3. Confrontation Clause
 
 23
 Franco-Lopez contends that his right to confrontation was violated by the admission, over objection, of testimony that Detective Kerns expected to find an individual named "Damien" at the motel room based on the information given to him by the CI. The government responds with the argument that the testimony elicited from Detective Kerns was not hearsay, but in fact was Kerns' state of mind.
 
 
 24
 Alleged violations of the confrontation clause are reviewed de novo. United States v. Garcia, 16 F.3d 341, 342 (9th Cir.), cert. denied, 115 S. Ct. 171 (1994); United States v. Payne, 944 F.2d 1458, 1468 n.9 (9th Cir. 1991) (noting that trial court's admission of evidence is generally reviewed for abuse of discretion but that violation of confrontation clause is generally reviewed de novo), cert. denied, 112 S.Ct. 1598 (1992). If a confrontation clause violation is demonstrated, the prosecution must persuade this court that the error was harmless beyond a reasonable doubt. Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986).
 
 
 25
 The alleged confrontation clause violation took place in the following discourse:
 
 
 26
 Government: What did you expect to find at the Mitchell Motel?
 
 
 27
 Det. Kerns: I expected to find cocaine and drug paraphernalia, scales packaging materials, and that sort of thing.
 
 
 28
 Government: Was there a particular individual or individuals that you expected to find?
 
 
 29
 The defense made an immediate objection on the basis that "this has been subject to a motion," referring to a motion in limine to exclude statements made by the CI and upon which the court did not rule. At a sidebar, the Franco-Lopez asserted that the question called for hearsay. The government responded that "[i]t's not hearsay. I'm asking what he knew ... I'm not [seeking] statements. I'm asking for his state of mind."
 
 
 30
 The district judge overruled the objection and gave the following instruction to the jury: "However, members of the jury, the question now has to do with what the witness expects, and does not establish the truth of those matters. That's only with regard to this witnesses' state of mind."
 
 
 31
 The government then resumed its examination:
 
 
 32
 Government: Detective Kerns, you indicated what you expected to find. Was there any particular individual that you expected to find at that location?
 
 
 33
 Det. Kerns: Yes. I expected to find a Hispanic man by the name of Damien there.
 
 
 34
 While this statement may imply that Damien Franco-Lopez was the "Damien" that Detective Kerns expected to find, the statement is not hearsay.[2] The defense did not object on the basis of relevance or a confrontation clause violation. Additionally, Franco-Lopez's conviction was supported by very strong evidence. Cocaine, packaging materials, and a gun were found in the room registered in his name. He admitted that the gun and the drugs belonged to him and described how he had acquired the cocaine and how he had sold it. Any error is harmless beyond a reasonable doubt and we do not reverse Franco-Lopez's conviction on the basis of a confrontation clause violation.
 
 II. Motion to Suppress Evidence
 Standard of Review
 
 35
 Generally, motions to suppress are reviewed de novo. United States v. Becker, 23 F.3d 1537, 1539 (9th Cir. 1994). The trial court's factual findings are reviewed for clear error. Id.
 
 Analysis
 
 36
 In Manzanarez-Mercoda's Motion to Suppress before the district court, he alleged that the officers executing the search warranted violated the "knock-and-announce" requirements of 18 U.S.C. Sec. 3109. The court found that the officers had complied with the statute and that sufficient exigent circumstances were present to justify their manner of entry.
 
 The statute provides as follows:
 
 37
 The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.
 
 
 38
 18 U.S.C. Sec. 3109.
 
 
 39
 In United States v. Becker, 23 F.3d at 1539, this court held that when police announced their presence while simultaneously kicking in the door was an unconstitutional entry. In United States v. Mendonsa, 989 F.2d 366, 370-71 (9th Cir. 1993), this court found that a three to five second delay between announcement and opening the door was not a sufficient period of time to wait given minimal exigent circumstances and reversed. The Mendonsa court cited United States v. McConney, 728 F.2d 1195, 1206 (9th Cir.) (en banc), cert. denied, 469 U.S. 824 (1984) for the proposition that exigent circumstances may excuse officers' failure to wait for an answer before forcible entry. Id. at 370.
 
 
 40
 Here, officers maintain that five to ten seconds lapsed between their announcement and their forcible entry. During this interval, the officers neither saw nor heard anything from within the room. Upon entry the officers saw one person running from them and another on a bed four feet away. The search warrant was issued based upon information that a sale of cocaine took place in Room 4. The underlying circumstances are similar to those of United States v. Markling, 7 F.3d 1309, 1318 (7th Cir. 1993), cert. denied on remand, 63 USLW 3658 (U.S. Mar. 6, 1995) (No. 94-7969). In Markling, officers entered a small apartment seven seconds after announcing their order to open the door. The Seventh Circuit found that in the absence of any sound emanating from the room and the probability that the narcotics would be flushed down the toilet, it was reasonable for the officers to conclude that the defendant would not answer the door. We find the instant case analogous to Markling and therefore find it was reasonable for the officers to have made a forced entry.
 
 
 41
 AFFIRMED.
 
 
 
 *
 The Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Franco-Lopez's first name is spelled "Damian" in his briefs and "Damien" by the government. For the sake of consistency, we shall refer to defendant Franco-Lopez as Damien
 
 
 [2]
 Fed. R. Evid. 801 defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."